**Chandru MIRCHANDANI,**
**Petitioner–Appellant,**

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

No. 86–4078.

United States Court of Appeals,
Ninth Circuit.

Argued Dec. 8, 1987.

Submitted Dec. 11, 1987.

Decided Jan. 13, 1988.

**1224**

Michael G. Karnavas, Anchorage, Alaska, for petitioner-appellant.

Michael R. Spaan, Anchorage, Alaska, for respondent-appellee.

Before WRIGHT, ANDERSON and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

Mirchandani appeals from the denial of his petition for habeas corpus in an extradition proceeding. He raises issues that require an understanding of the nature of extradition proceedings as well as of this record.

This is the second time that the district court has denied appellant's petition for habeas corpus after he was ordered extradited in January 1986. After the first denial, he noticed an appeal to this court. We ordered a limited remand to permit the district court to address the Government's post-judgment motion to reopen the proceedings in order to consider newly discovered evidence concerning discrepancies in an affidavit presented at the original extradition hearing. The district court then considered additional evidence and concluded that sufficient evidence supported extradition. This appeal followed.

Mirchandani contends that the district court exceeded the scope of the limited remand in a manner requiring us to order a writ of habeas corpus to issue. He also challenges the sufficiency of the evidence. Because we disagree with appellant's strict constructionist view of remands in the extradition context, and because sufficient evidence supported the extradition upon the limited standard of review applicable in such proceedings, we affirm.

The background is as follows. On December 9, 1985, Mirchandani was arrested in Anchorage, Alaska, pursuant to 18 U.S.C. § 3184, under a requisition from Hong Kong. The charges against Mirchandani arose from an alleged systematic fraud perpetrated by N & J, a Hong Kong business Mirchandani chaired and in which he owned 80% of the shares. The alleged fraud involved the forgery of bills of lading for transactions that never occurred, but which banks credited to N & J, causing a $20 million loss to eight Hong Kong banks. The complaint on which the magistrate issued his warrant alleged that the magistrate of Western Hong Kong issued a warrant for Mirchandani's arrest, that Mirchandani fled the country of Hong Kong and was at the Anchorage airport, and that Mirchandani was charged with bank fraud which was within the offenses enumerated in the applicable extradition treaty. A magistrate considered the evidence and ordered extradition.

Mirchandani then filed a petition for writ of habeas corpus, alleging that the evidence presented was not competent to establish his criminality for extradition purposes. In July 1986, the district court adopted the magistrate's report and recommendation, and denied the habeas corpus petition.

Mirchandani timely filed a notice of appeal, contending that insufficient evidence existed for extradition. Four months later, the Government moved for a temporary remand, pursuant to Fed.R.App.P. 27, due to newly discovered evidence. This newly discovered evidence consisted of discrepancies in the affidavit of the Operations Manager for Lloyd Shipping Information Services (LSIS), which provides information on ship specifications, ship movements, and ship ownership to any interested party. From the Operations Manager's affidavit, the magistrate had concluded that bills of lading, pertaining to merchandise that N & J supposedly loaded on a number of ships, were fraudulent because the ports were not in close proximity to the alleged destinations, the voyages described in the bills bore no resemblance to the records, and the alleged weight of the cargo exceeded the ships' capacity.

However, in preparing its case against Mirchandani, Hong Kong discovered that LSIS's information from Korea was incorrect, and relayed this finding to the Government. Since the Operations Manag-

er had relied on LSIS's inaccurate information in his affidavit, the new evidence from Hong Kong created discrepancies. After receiving both the Government's motion and the district court's request for remand, we granted a limited remand "so that [the Government's] post-judgment motion may be addressed and decided."

On remand, the magistrate's report and recommendation concluded that sufficient evidence supported a finding of probable cause as to each of the charges. The magistrate made specific findings as to each of the Korean transactions, which were all considered tainted by the inaccurate affidavit, and concluded that each was supported by sufficient evidence from other sources to warrant extradition. The supporting evidence included additional affidavits plus exhibits. Moreover, the inaccurate affidavit had no effect on forty-six other counts that did not involve Korean transactions. The district court adopted the magistrate's findings and conclusions, and again denied the habeas corpus petition. Mirchandani timely filed an amended notice of appeal.

■ Mirchandani first argues that the remand was limited to permit only removal of the discrepancies from the inaccurate affidavit and a determination as to whether sufficient evidence existed to extradite him without that information. He contends that the magistrate improperly considered new evidence consisting of additional affidavits, thus exceeding the scope of the remand and rendering the extradition order invalid.

In arguing that the district court could not go beyond a narrow interpretation of the remand order, Mirchandani cites no authority involving a limited remand in an extradition proceeding. Nor does he take into account the procedural posture of this remand, which came before this court had considered the merits of any appeal. He therefore relies inappropriately upon *United States v. Davis,* 714 F.2d 896 (9th Cir. 1983). There we reversed a district court's decision because, on remand, it went beyond the scope of our mandate which had issued after we decided the original appeal.

In *Davis,* we held on the merits of the criminal appeal that evidence had been admitted based upon a search warrant containing material false statements. We remanded for a *Franks v. Delaware* hearing on the knowledge of the officer preparing the affidavit. When the district court on remand held that the false information was not material, or in any event, that any error in admitting the evidence was harmless, the district court reached conclusions inconsistent with our decision on appeal and hence with the terms of our remand. We reversed because of that inconsistency and in order to preserve the integrity of the appellate process.

This result was required in *Davis* because district courts are not free to decide issues on remand that were previously decided either expressly or by necessary implication on appeal. *Liberty Mutual Insurance Co. v. Equal Employment Opportunity Commission,* 691 F.2d 438, 441 (9th Cir.1982). *See also, Stephens v. F/V Bonnie Doon,* 731 F.2d 1433, 1435 (9th Cir.1984), in which we defined the permissible scope of trial court proceedings on remand after a decision by an appellate court. We stated that "the mandate is controlling as to all matters within its compass, but leaves the district court any issue not expressly or impliedly disposed of on appeal." A rule requiring a trial court to follow an appellate court's directives that establish the law of a particular case is necessary to the operation of a hierarchical judicial system. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478 at 788 (1981).

Such a rule applies, however, only with respect to issues previously determined by the appellate court. It has no application here, since no appellate decision had issued on the merits. In this case, at the time of the remand the only appellate decision was to abort the appeal at the request of one party and the district court in order to pave the way for further evidentiary proceedings. Assuming that the district court then expanded the scope of those proceedings beyond that originally contemplated by all concerned at the time of the remand, no principles associated with the doctrine

of law of the case precluded such expansion; the findings and conclusions of the district court on remand could not have been in conflict with any previous decision of this court. Hence, no law of the case fettered the discretion of the district court in admitting and evaluating additional evidence.

We do not hold that the district court is always free to expand upon the terms of a remand that occurs before the appellate court decides an appeal. In some situations the district court must follow carefully the terms of a narrowly tailored remand even though it takes place at a very early stage in an appeal. For example, following a criminal conviction, double jeopardy considerations dictate such supervision to avoid the impermissible retrial of matters previously determined.

No double jeopardy considerations apply here, however, for this is not a review of a criminal conviction. The appellant in this case is seeking review of an extradition proceeding. The Supreme Court has analogized such a hearing to a preliminary hearing on criminal charges, a stage before jeopardy attaches. *See Charlton v. Kelly*, 229 U.S. 447, 461, 33 S.Ct. 945, 949, 57 L.Ed. 1274 (1913). Principles of res judicata do not apply, *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir.), *cert. denied*, 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978), and the Government is free to reinstitute an extradition request after it has been denied in a first extradition proceeding. *In re Mackin*, 668 F.2d 122, 128 (2d Cir.1981); *Hooker*, 573 F.2d at 1367 and n. 7. Thus, the Government may pursue extradition in repeated proceedings until it is successful.

We therefore hold that the district court did not impermissibly exceed the scope of the remand and that it was well within the court's discretion to consider additional affidavits to determine the true facts underlying the issues before it. A trial court should have discretion to consider evidence in all matters within its jurisdiction unless there is some threatened interference with protections afforded criminal defendants or a disruption of the judicial system's orderly operation. Neither was a consideration in this case.

■ The appellant also argues that the magistrate should not have ordered extradition unless the evidence showed him guilty beyond a reasonable doubt, analogizing an international extradition hearing to a preliminary hearing. However, this circuit has previously considered, and squarely rejected, the adoption of a probable cause standard that would require a finding of guilt beyond a reasonable doubt in extradition proceedings. *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 271, 93 L.Ed. 2d 247 (1986). Instead, we use the lesser standard set forth by the Supreme Court in *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925): "whether there was any evidence warranting the finding that there was a reasonable ground to believe the accused guilty." *See, e.g., Matter of Extradition of Kraiselburd*, 786 F.2d 1395, 1399 (9th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 586, 93 L.Ed.2d 588 (1986); *Valencia v. Limbs*, 655 F.2d 195, 198 (9th Cir.1981).

■ The appellant's contention that the evidence is insufficient is similarly without merit. The district court concluded that sufficient evidence existed as to 73 of the 74 counts charged. In addition to appellant's 80% ownership of the business allegedly involved in the bank fraud and appellant's active involvement in its management, the supporting evidence on each count ranged from one individual's affidavit to nine affidavits plus exhibits.

Affirmed.